# United States District Court, Northern District of Illinois

JS6

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1144 | DATE | 7/11/2001 |
| CASE TITLE | USA vs. Marshall Arrington, Jr. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Arrington's motion to vacate sentence [1-1] is hereby denied. This case is dismissed with prejudice. Judgment is entered in favor of the United States and against Arrington.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 12 2001 date docketed | 27 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | 15 docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RO | courtroom deputy's initials | 01 JUL 11 PM 3: 34 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 1144 |
| v. ) | |
| ) | Judge Ruben Castillo |
| MARSHALL ARRINGTON, JR., ) | |
| ) | |
| Defendant. ) | |

JUL 1 2 2001

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Marshall Arrington, Jr.'s ("Arrington") Motion to Vacate Conviction and Set Aside Sentence Pursuant to 28 U.S.C. § 2255 ("motion to vacate sentence"). For the reasons that follow, Arrington's motion is hereby denied, (R. 1-1), and this case is dismissed with prejudice.

## RELEVANT FACTS

The relevant facts relating to Arrington's criminal conviction before this Court are set forth in a published opinion by the Seventh Circuit Court of Appeals. *See United States v. Arrington*, 159 F.3d 1069 (7th Cir. 1998). The facts of that case are retold here as they relate to Arrington's current § 2255 petition.

During a four-month period in late 1996 and early 1997, seven bank robberies occurred at Bank of America branch offices located inside south suburban Chicago Jewel food stores. In the first three robberies, the thief displayed an object that appeared to be a gun, while during the last four crimes an actual handgun was used. Approximately $62,000 was stolen during these heists, and police from a number of Chicago suburbs as well as officials from the FBI collaborated to investigate the multiple robberies.

27

As the robberies continued in early 1997, the FBI eventually targeted Arrington as their principal suspect.[1] FBI and police began surveillance of Arrington's home in suburban Hinsdale, Illinois, and on March 20, 1997, followed him with ground and aerial surveillance as he left his residence. After a short time, however, authorities lost all contact with Arrington on a Chicago expressway. When officials learned approximately three hours later of a robbery at the West Dundee Jewel food store Bank of America, they immediately suspected Arrington. Agents awaited Arrington's return to his Hinsdale residence and, an hour later, he drove up in his Blazer.

As Arrington pulled into his residence, police stopped him, flashed their lights, and instructed Arrington to show his hands. Arrington did as he was instructed, "but then pushed himself away from the steering wheel and started running from the Blazer." *Arrington*, 159 F.3d at 1071. Arrington was apprehended and handcuffed, and a search of his person revealed two handguns and more than $2,000 in cash. Arrington was then taken to a police station where he confessed to the robberies and consented to a search of his vehicle and residence. These searches turned up incriminating evidence, including marked money from the West Dundee Bank of America and receipts for expensive cash purchases during the preceding months. Arrington was eventually tried and convicted by a jury of seven robbery counts and four counts of using a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c). This Court sentenced

---

[1] A passerby at the fourth robbery identified a black "Blazer" or "Jimmy" sport utility vehicle missing a front license plate as possibly used in that crime, and a bystander at the fifth robbery similarly identified the truck as having the letters "L and S" in its rear license plate. Police first suspected Arrington after he was observed by a routine patrol officer driving his black Blazer, license plate "LDS-976." Upon further investigation, police learned of Arrington's criminal record, which included convictions for armed robbery, rape, burglary, criminal damage to property, and attempted deviant sexual assault. *See United States v. Arrington*, 159 F.3d at 1070-71, 1072 n.1.

2

Arrington to eighty-three years imprisonment for the crime spree, and the Seventh Circuit Court of Appeals affirmed the conviction and sentence on direct appeal. *See id.* at 1073. Throughout all these proceedings, Arrington was represented by attorneys appointed for his defense.

Arrington raises this timely collateral attack to his conviction,[2] making four general claims in his motion to vacate sentence:[3] (1) that his stop and subsequent arrest on March 20, 1997 violated his Fourth Amendment rights; (2) that his team of two defense attorneys rendered ineffective assistance of counsel at both his trial and sentencing; (3) that prosecutors engaged in professional misconduct by withholding potentially exculpatory evidence and by offering witness testimony that prosecutors knew to be false; and (4) that his eighty-three year sentence was unconstitutional as it violated the principle from *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *i.e.* any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.

## LEGAL STANDARDS

The standard this Court applies in evaluating whether or not to hold an evidentiary hearing to further investigate a § 2255 claim is contained in the statute: for this Court to refuse a petitioner a hearing, "the motion and the files and records of the case [must] conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255. "Indeed, a judge should dismiss

---

[2] Arrington's filing is within the one-year period of limitation imposed by 28 U.S.C. § 2255 because his petition for certiorari to the United States Supreme Court was denied on April 29, 1999, *see Arrington v. United States*, 526 U.S. 1094 (1999), and his § 2255 motion was received by the clerk of this Court on February 25, 2000.

[3] Arrington's *pro se* memorandum is often unclear but this Court responds to the best of its understanding. Arrington's four claims are contained in two filings. The first three claims arise from Arrington's initial memorandum received February 25, 2000, and the final claim from an addendum received June 26, 2001.

3

the petition without a hearing if it 'plainly appears from the fact of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'" *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) (quoting Rule 4(b) of the Rules Governing Section 2255 Proceedings). "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 249, 263 (7th Cir. 1994) (internal citations and quotations omitted).

In evaluating Arrington's § 2255 petition, this Court recognizes its right not to reconsider issues previously decided at Arrington's trial or by the Seventh Circuit in his appeal. "Although *res judicata* does not apply in § 2255 proceedings, 'the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings.'" *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995), quoting *Taylor v. United States*, 798 F.2d 271, 273 (7th Cir. 1986). "[A] petition under § 2255 'will not be allowed to do service for an appeal.'" *Johnson v. United States*, 838 F.2d 201, 202 (7th Cir. 1988) (citations omitted). Furthermore, a petitioner may be procedurally barred from raising issues in a § 2255 proceeding that were not raised on direct appeal. Constitutional errors that could have been raised on direct appeal but were not will be barred from a § 2255 motion unless the petitioner can show cause and prejudice for the omission, while non-constitutional errors that were not raised on appeal are barred from a § 2255 motion regardless of cause and prejudice. *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988).

## ANALYSIS

With these standards in mind, this Court now evaluates the four broad claims raised in Arrington's motion to vacate sentence.

## I. Fourth Amendment Claim

Arrington's first argument is that his arrest on March 20, 1997 was unconstitutional. Arrington claims that police did not have sufficient grounds to stop him outside his home and that his subsequent arrest was not based on adequate probable cause. In an attempt to support this conclusion, Arrington makes the following assertions: (1) that FBI agents violated his Fourth Amendment rights "by planning and executing a 'simulated' Trafic [sic] Felony Stop," (R. 3, Def.'s Mem. in Support of § 2255 Mot. at 3); (2) that the eyewitnesses' description of the bank robber as a tall African-American male was inadequate to serve as a basis for his arrest; (3) that the extensive police surveillance of him belies any direct evidence that he actually committed any of the robberies; (4) that at the time of his arrest there "was no viable reason for agents to suspect Arrington of being anything beyond what he was, a law abiding citizen," (*id.* at 8); and (5) that since no records of his aerial surveillance on the morning of March 20, 1997 were ever produced by prosecutors, this Court should question whether or not that surveillance occurred and consider his seizure prejudiced as a result.

This Court is not persuaded by Arrington's search and seizure arguments. Arrington's Fourth Amendment claim patently fails because this issue was decided against him at trial, affirmed on direct appeal and none of Arrington's current assertions cause this Court to question those results. This Court will not re-evaluate the constitutionality of Arrington's arrest absent a

5

showing of changed circumstances. *Olmstead*, 55 F.3d at 319 ("in the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal"). Arrington's March 20, 1997 stop was constitutional because police knew that a crime had recently been committed, and they had a reasonable suspicion that Arrington was involved. *See, e.g., United States v. Hensley*, 469 U.S. 221, 227-28 (1985) (acknowledging a police officer's authority to stop a suspect under *Terry v. Ohio*, 392 U.S. 1 (1968), when the officer has a reasonable, articulable suspicion that the person has been involved in criminal activity). Then, "[w]hen Arrington bolted, was stopped, and guns were found on his person, the agents had probable cause – in spades – for an arrest." *United States v. Arrington*, 159 F.3d at 1072. *Cf. Illinois v. Wardlow*, 528 U.S. 119 (2000) (holding that flight from police is suggestive of wrongdoing and can be a factor in a lawful *Terry* stop and frisk).

## II. Ineffective Assistance of Counsel Claim

Arrington is unhappy with his defense attorneys' handling of his trial and sentencing and argues in his § 2255 motion that his attorneys rendered ineffective assistance of counsel. Arrington posits the following errors. First, Arrington asserts that his attorneys' failure to question agents Morrocco and Lisle (the principal arresting officers) at a pre-trial suppression hearing was clear error as the testimony of these officers would likely have caused this Court to suppress his arrest. Second, Arrington claims that his lawyers failed to seize on the impeaching effects of the eyewitnesses' varying descriptions of the bank robber. For instance, Arrington points to exhibits wherein the West Dundee Bank of America tellers gave differing descriptions of the robber as right versus left-handed and clean versus not clean-shaven. Furthermore, Arrington argues that his lawyers negligently overlooked the pilot of the surveillance aircraft as a

6

source of exculpatory information. Specifically, he contends, the pilot of the surveillance aircraft could have been a source of "mitigating evidence" whom his lawyers absolutely should have questioned. Third, Arrington asserts that his attorneys made a significant blunder by stipulating at trial that the Bank of America branches were insured by the Federal Deposit Insurance Corporation (FDIC) (this being a necessary element for his trial in federal court). (R. 3, Def.'s Mem. in Support of § 2255 Mot. at 16 ("Neither of the Defense Counsels challenged jurisdiction or the Prosecutors stipulation alledging [sic] that the Bank of America Branches were under FDIC protection.").) Arrington believes that his attorneys' conduct here "cannot be considered insignificant" and should be a reversible error. (*Id.*)

Arrington has an uphill battle to convince this Court to hold an evidentiary hearing to further evaluate his claims of ineffective assistance of counsel.[4] This Court must presume that Arrington's attorneys rendered effective assistance, and it is his responsibility to evince reasons to the contrary. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (stating that "[b]ecause of the difficulties inherent in making the evaluation [of trial counsel's conduct], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). We rely on the following guidance from *Dugan v. United States*, 18 F.3d 460, 463-64 (7th Cir. 1994) (quotations omitted), which applies the Supreme Court's two-part ineffectiveness test in *Strickland v. Washington*.

---

[4] This Court will evaluate Arrington's ineffective assistance claim even though this issue was not raised on direct appeal because Arrington was represented by the same attorney at trial and before the Seventh Circuit, a valid reason for omitting this claim from his appeal. *See Guinan v. United States*, 6 F.3d 468, 472 (7th Cir. 1993) ("[I]f a defendant postpones raising the issue of ineffective assistance of counsel until the collateral stage he must have a valid reason for the postponement . . . [such as] that his trial counsel was his appellate counsel.").

7

The defendant bears a heavy burden in establishing an ineffective assistance of counsel claim. He must show (1) that the attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong), *id.* at 694. With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that formed the basis for his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. The court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight. *Id.* at 698. As to the prejudice prong of the inquiry, a "reasonable probability" of a different result means a "probability sufficient to undermine confidence in the outcome [of the trial]." *Strickland*, 466 U.S. at 694.

Arrington's first claim – that his lawyers failed him by not subpoenaing agents Morrocco and Lisle for a suppression hearing prior to his trial – does not pass either the performance or prejudice prong of the *Strickland* ineffectiveness test. Arrington's attorneys' performance did not fall below an objective standard of reasonableness. Prior to Arrington's trial, his defense attorneys filed motions to suppress his arrest, his confession at the police station, his consent to search his vehicle and residence, and his line-up identification by robbery eyewitnesses. We denied all of these motions. Defense counsel then filed motions to reconsider, which were granted. An evidentiary hearing was subsequently held at which only Special Agent Beth Mullarkey testified. Agents Morrocco and Lisle did not testify and the defense counsel did not raise the issue of suppressing Arrington's arrest.

Arrington's assertions to the contrary, the decision to forego trying to quash the arrest was not error because the facts of the arrest outlined above clearly demonstrate that such a motion would have been doomed to certain failure. Trial counsel had adequate reasons for not pressing this issue, and this Court will not second-guess counsel's strategy. *See Strickland*, 466 U.S. at

8

690-91 (stating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigations are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").

Arrington's argument similarly fails to satisfy the *Strickland* "prejudice prong." Ten officers participated in Arrington's arrest and, as the Seventh Circuit concluded, the officers had probable cause "in spades." *Arrington*, 159 F.3d at 1072. Even assuming that the arrest was improper, or that this Court would have suppressed the arrest had Arrington's attorneys continued pursuing the point, there is still no prejudice to his trial. "[U]nder *Strickland* no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial." *Holman v. Page*, 95 F.3d 481, 492 (7th Cir. 1996).

This Court is similarly unswayed by Arrington's second ineffectiveness of counsel argument. The variation in the witness accounts regarding the bank robber's facial hair and whether he was left- or right-handed was not a significant issue (eyewitnesses often get far more serious matters confused), and this Court will not second-guess trial counsel's strategy of dealing with these minor discrepancies. Similarly, this Court fails to see what error Arrington's attorneys could have made by not questioning the pilot of the police aircraft used in his surveillance. The aircraft lost contact with Arrington and did not re-establish surveillance prior to his arrest. Thus, defense counsel's decision not to question the pilot was reasonable. The fact stands that Arrington was caught "red-handed" as he returned home with the proceeds and accouterments used in the West Dundee bank robbery.

9

Finally, Arrington's argument that his attorneys failed him by stipulating that the Bank of America branches were FDIC insured is baseless. The stipulation was a simple trial accommodation to avoid the prosecutor's having to produce a sufficient certificate of insurance, call Bank of America officials to testify or take other measures sufficient to satisfy this legal requirement. *See, e.g., United States v. Knop*, 701 F.2d 670, 674 (7th Cir. 1983). *Cf. United States v. Platenburg*, 657 F.2d 797, 799 (5th Cir. 1981) (holding that proof of FDIC status is an essential element of the federal offense charged). There was nothing unprofessional about this. What is more, this stipulation did not prejudice Arrington's trial as this Court believes that the government would have established that the Bank of America branches were FDIC insured had the stipulation not been entered into. For instance, a cursory look at the Bank of America website, "www.bankofamerica.com," clearly indicates that the Bank is FDIC insured.

Despite Arrington's protests to the contrary, this Court concludes that Arrington's attorneys rendered very competent legal assistance. Arrington, himself, admits in his petition that, "Defense Counsel for the Petitioner filed a total of Eight (8) motions [and] [a]t least four (4) of those Motions were to quash the arrest of the Petitioner and/or to Suppress Evidence produced after the Petitioner's Seizure." (R. 3, Def.'s Mem. in Support of § 2255 Mot. at 12.) Such actions are not indicative of an incompetent defense but, to the contrary, show that Arrington's attorneys made great efforts to advance his cause under factually difficult circumstances. *Cf. Reeves v. United States*, No. 00-3774, 2001 WL 704476, at *4 (7th Cir. Jun. 22, 2001) (affirming district court opinion that trial attorney had not rendered ineffective assistance within the meaning of law despite making only minimal investigatory efforts and not calling any defense

witnesses at trial).[5]

## III. Prosecutorial Misconduct Claim

Arrington's next argues that the trial was prejudiced through prosecutorial misconduct. First, Arrington claims that prosecutors knowingly presented false witness testimony at trial, *i.e.*, "the Agents who testified offered perjured testimony." (R. 3, Def.'s Mem. in Supp. of § 2255 Mot. at 23.) Second, Arrington asserts that because aerial surveillance records for March 20, 1997 were not provided to the defense despite repeated requests, this Court should question the legality of that surveillance and whether or not it in fact ever existed. Returning to his trial counsel's stipulation that the seven Bank of America branches were FDIC insured, Arrington next asserts error because prosecutors never provided the defense with any proof of this insurance. Lastly, Arrington challenges the prosecutor's closing argument as containing improper statements to the jury.

Before this Court examines the merits of Arrington's assertions, this Court first notes that it is not required to evaluate Arrington's prosecutorial misconduct claims at all because this issue is procedurally barred. This issue was not raised in Arrington's appeal of his criminal

---

[5] We note that, in *Bruce v. United States*, No. 99-4337, 2001 WL 748161 (7th Cir. July 5, 2001), the Seventh Circuit reversed the district court's decision to deny petitioner's motion for post-conviction relief under 28 U.S.C. § 2255. The *Bruce* Court determined that the district court should have conducted an evidentiary hearing on petitioner's ineffective assistance of counsel for failure to investigate claim because the record contained conflicting affidavits. *Bruce* is easily distinguished. In that case, there was a question of fact as to whether defense counsel adequately assessed petitioner's potential alibi witnesses. In this case, however, an evidentiary hearing is not required because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* at *5 (quoting 28 U.S.C. § 2255).

11

conviction,[6] and Arrington has not met the standard of showing cause and prejudice such as would require this Court to hear these arguments. *See Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (holding that a petitioner is barred from raising any constitutional issues in a § 2255 proceeding which could have been raised on direct appeal unless the petitioner can show cause and prejudice). Because Arrington had a full opportunity to assert prosecutorial misconduct in his appeal to the Seventh Circuit, and he has not shown cause for why this issue was not raised then, the issue is barred from this § 2255 petition.

Notwithstanding this procedural defect, this Court chooses to evaluate Arrington's arguments simply because we are convinced that they are completely without merit. First, Arrington's claim that prosecutors knowingly offered this Court perjurious testimony would be a cause for great concern if there were an iota of support for this bald assertion. There is not. Arrington asserts that the fact that aerial surveillance records were not provided to the defense *ipso facto* shows that government witnesses committed perjury. This is nonsensical and this Court retains its faith in the credibility of the trial testimony.

Arrington's second argument attacks the prosecutors for not turning over the FBI's aerial surveillance records despite multiple defense requests for any such documents. Assuming this is true for the purposes of Arrington's petition, we still do not see any questionable prosecutorial conduct. Government witnesses testified at Arrington's trial that the aircraft used in his surveillance was not required to keep records of its activities – it was simply supposed to keep

---

[6] The appellate record shows that four issues were raised on appeal: a severance claim, a jury instruction claim, a suppression of evidence claim and a sentencing claim. *See Arrington*, 159 F.3d 1069.

12

track of where he went. Witnesses further testified that the aerial and ground surveillance teams all lost contact with Arrington on the morning of March 20, 1997, shortly after he entered a Chicago expressway. Thus, contrary to Arrington's assertion, the surveillance flight was not important in his conviction because it did not establish any material facts in the prosecution's case; the aircraft had lost him. Based on these facts, this Court fails to see how not receiving aerial surveillance records (even assuming that such records ever existed) impacted Arrington's defense in any way.

Arrington's third and fourth claims of prosecutorial misconduct are frivolous as well. Arrington is correct that his defense counsel's trial stipulation that the Bank of America branches were FDIC insured was important. *See Knop*, 701 F. 2d at 674. But this was hardly improper conduct on the government's part, nor was the prosecution under any responsibility to prove FDIC insurance at trial. Similarly, this Court has reviewed the trial transcript and is confident that the prosecutor's closing remarks were not improper. The prosecution's comments about "bait bills" being seized from Arrington was simply a restatement of evidence provided in the course of the trial and was in no way inappropriate.

## IV. *Apprendi* Claim

Arrington's final claim arrives by way of an addendum to his initial filing. In the addendum, Arrington asserts that his eighty-three year sentence was unconstitutional because it violated the principle from *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at

13

490. This claim lacks merit because *Apprendi* is inapposite here.

The Supreme Court in *Apprendi* was responding to a situation wherein a defendant had been convicted of a particular crime but then sentenced by the judge to an extended term of imprisonment under a separate New Jersey "hate crime" law. *See id.* at 468-73. The Court held that the imposition of the enhanced sentence violated due process because a necessary element of the hate crime, the defendant's state of mind, had not been presented to the jury. *See id.* at 491-93. The effect of the Court's decision was to ensure that a "criminal will never get *more* punishment than he bargained for when he did the crime." *Id.* at 498 (Scalia, J., concurring) (italics in original).

Arrington's current challenge to his sentence is unpersuasive because *Apprendi* is simply not relevant to this case. Unlike *Apprendi*, the jury in Arrington's trial heard evidence relating to every charge against him and convicted him on each of eleven counts. This Court then used its allowable discretion to impose sentences for each count based on the jury's findings and the Federal Sentencing Guidelines. The fact that these individual sentences totaled to a term of eighty-three years imprisonment merely reflects the number and severity of crimes committed, not any unconstitutional enhancements of particular penalties. Arrington's prison term is lengthy but he "got what he bargained for" when he committed fully eleven felonies.

## CONCLUSION

For the preceding reasons, it is clear that Arrington is not entitled to relief in his petition, and this Court declines to hold an evidentiary hearing to evaluate his claims further. Arrington's motion to vacate sentence is hereby denied, (R. 1-1), and this case is dismissed with prejudice. The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Plaintiff.

ENTERED:

*[signature]*

Judge Ruben Castillo
United States District Court

Dated: July 11, 2001